UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mortgage Electronic Registration
Systems, Inc., as nominee for
CitiMortgage, Inc.,

          Plaintiff,

v.

Christopher S. Sheldon;
Wells Fargo Bank, N.A.;
United States of America;
XYZ Corporation; ABC Partnership;
John Doe, whose true names are
unknown to Plaintiff; Mary Roe,
whose true names are unknown to
Plaintiff; and Citibank,

          Defendants.

Civil No. 08-5220 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

---

Sean O. Skrypek, Esq., and Steven R. Little, Esq., Coleman Hull & van Vliet, PLLP, counsel for Plaintiff.

Ana H. Voss and Roylene A. Champeaux, Assistant United States Attorneys, United States Attorney's Office, counsel for Defendant United States of America.

---

**INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment brought by Defendant United States of America and Plaintiff Mortgage Electronic Registration Systems, Inc. ("MERS"). In its Complaint, which was removed to this Court from Hennepin County District Court, MERS asserts a cause of action for reformation of the

legal description on its mortgage and an action to quiet title.[1]  For the reasons set forth below, both motions are denied.

## BACKGROUND

This action centers on a mortgage for certain real property located in Hennepin County, Minnesota, in which the legal description contained a typographical error.  The United States asserts that, as a result of the typographical error, the first mortgage is inchoate and that the later-filed federal tax lien on the property by the United States on behalf of the Internal Revenue Service ("IRS") is entitled to priority.

By all accounts, the property at issue (the "Property") is correctly[2] legally described as follows:

> Parcel 1:  That part of Lot 1, Block 3, Braemar Hills Fourth Addition, embraced within the East 189 feet of the Northeast 1/4 of Section 7, Township 116, Range 21, according to the plat thereof.  (Torrens);
>
> Parcel 2:  Lot 1, Block 3, Braemar Hills Fourth Addition except for that embraced within the East 189 feet of the Northeast 1/4 of the Northeast 1/4 of Section 7, Township 116, Range 21, according to the plat thereof.  (Abstract)

(Skrypek Aff. ¶ 2.)  Defendant Christopher S. Sheldon is currently the fee owner of the Property.  (*Id.* at ¶ 3.)

---

[1]  Defendants Citibank and Wells Fargo Bank were both served with MERS' Complaint and Summons on September 3, 2008.  Neither of these two Defendants has responded to the Complaint. (Skrypek Aff. ¶ 8, Exs. 5, 6.)

[2]  Although not relevant to the Court's ruling, the Court believes that, based on the parties' illustration of the legal description at oral argument, the phrase "of the Northeast 1/4 of the Northeast 1/4" appears to contain a redundancy as to Parcel 2.

MERS, as nominee for CitiMortgage, Inc., holds a mortgage on the Property dated September 19, 2005, for the original principal amount of $502,500, given by Sheldon as mortgagor in favor of MERS as mortgagee (the "MERS mortgage").  (*Id*. ¶ 4.)  The MERS mortgage contains the following incorrect legal description:

> Parcel 1:  That part of Lot 1, Block 3, Braemar Hills Fourth Addition, embraced within the East 189 feet of the Northeast 1/4 of Section 7, Township 116, Range 21, according to the plat thereof.  (Torrens);
>
> Parcel 2:  Lot 1, Block 3, Braemar Hills Fourth Addition except for that embraced within the East 189 feet of the Northeast 1/4 of the Northeast **14** of Section 7, Township 116, Range 21, according to the plat thereof.  (Abstract).

(*Id*. ¶ 4, Ex. 1 at 17 (emphasis added).)  The MERS mortgage was recorded with the Office of the Hennepin County Recorder on September 20, 2005, as Document No. 8658239 and with the Hennepin County Office of the Registrar of Titles as Document No. 4164023.  (*Id*. at ¶ 4.)  MERS' attorney asserts that it is an "undisputed fact that [the MERS mortgage] was properly recorded against the Property and appears on all title searches of the Property."  (Mem. of Law in Supp. of Pl's Mot. for Summ. J. at 5.)

Defendant Citibank holds a home equity line of credit mortgage on the Property dated April 4, 2006, for the amount of $58,200, given by Sheldon as mortgagor in favor of Citibank (the "Citibank mortgage").  (Skrypek Aff. ¶ 5, Ex. 2.)  The Citibank mortgage was recorded on April 27, 2006, with the Hennepin County Office of the Registrar of Titles as Document No. 4252004.  (*Id*. ¶ 5.)  The Citibank mortgage used an abbreviated version of the legal description.  (*Id*. ¶ 5, Ex. 2 at 8.)

Defendant Wells Fargo Bank holds a home equity line of credit mortgage on the Property dated October 11, 2006, for the amount of $108,000, given by Sheldon as mortgagor in favor of Wells Fargo (the "Wells Fargo mortgage"). The Wells Fargo mortgage was recorded on November 2, 2006, as Document No. 4323697 with the Office of the Hennepin County Recorder, and on June 17, 2008, with the Hennepin County Office of the Registrar of Titles as Document No. 9148061. (*Id*. ¶ 6, Ex. 3.) The Wells Fargo mortgage also utilized an abbreviated version of the legal description. (*Id*.)

The United States, through the Internal Revenue Service ("IRS"), holds an unreleased Notice of Federal Internal Revenue Tax Lien or Abstract of Judgment against Sheldon dated November 29, 2006, in the amount of $38,062.89 (the "Federal Tax Lien").[3] The Federal Tax Lien was recorded with the Office of the Hennepin County Recorder on December 11, 2006, as Document No. 8905640. (Skrypek Aff. ¶ 7, Ex. 4.)

MERS' Complaint sought to reform the MERS mortgage by correcting the legal description for Parcel 2 of the Property. In addition, MERS sought a court order declaring that the MERS Mortgage took priority over the interests of Citibank, Wells Fargo, and the federal tax lien.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the

---

[3] As of September 19, 2008, the value of the federal tax lien was $40,427.48.

4

evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

State law determines the nature and extent of a taxpayer's interest in property. *Minn. Dept. of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir. 1999) (*citing Aquilino v. United States*, 363 U.S. 509, 513 (1960) (other citations omitted)). But federal law "governs the relative priority accorded to the competing liens asserted against the property of the delinquent taxpayer." *Id.* (*citing Aquilino*, 363 U.S. at 513-14). "Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *Id*. (*quoting United*

5

*States v. McDermott*, 507 U.S. 447, 449 (1993); and *United States v. City of New Britain*, 347 U.S. 81, 87 (1954) (other citations omitted)). Under federal law, the priority of a lien depends on the time that the lien attached to the property in question and when the lien became choate. *Minn. Dept. of Revenue*, 184 F.3d at 728 (citations omitted).[4]

It is a question of federal law as to when a lien has become choate or perfected. *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 88 (1963). "Choate state-created liens take priority over later federal tax liens." *Id.* "A state-created lien is 'choate' for 'first in time' purposes only when it has been 'perfected' in the sense that there is nothing more to be done, *i.e.*, when 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *Minn. Dept. of Revenue*, 184 F.3d at 728 (*quoting New Britain*, 347 U.S. at 84). The test for choateness or perfection "requires that the creditor [has] the right to summarily enforce its lien." *Id*. (*citing United States v. Vermont*, 377 U.S. 351, 359 (1964)).

In its Motion for Summary Judgment, MERS asserts that its mortgage is a choate lien. Specifically, MERS contends that the MERS mortgage properly identifies MERS as the mortgagee, clearly indicates that the original principal amount was $502,500, and

---

[4] Federal law regarding lien priority differs from state law in this regard. Under Minnesota law, a bona fide purchaser can avoid prior conveyances that have not been recorded in accordance with the law. *In re Vondall*, 364 B.R. 668, 670 (B.A.P. 8th Cir. 2007) (citing Minn. Stat. § 507.34). A bona fide purchaser is one who "in good faith pays value for an interest in property without actual, constructive, or implied notice of the inconsistent, outstanding rights of others." *Id*. at 671. Constructive notice is limited to what is set forth on the face of the mortgage, and a mortgage with a defective legal description "does not provide constructive notice to subsequent purchasers unless the subject property can be determined with reasonable certainty or the defect is apparent on the face of the mortgage." *Id*. (citations omitted).

identifies the property, even though it contains a minor typographical error.  MERS asserts that its position is consistent with relevant case law regarding the choateness doctrine.

In support of its position, MERS points to *In re Vondall*, 364 B.R. 668.  The property in *Vondall* was correctly legally described as "Lot 13, Block 3, West River Estates, Abstract Property."  *Id*. at 670.  But the mortgage incorrectly described the property as "Lot *B*, Block 3, West River Estates Abstract Property."  *Id*. (emphasis added).  Due to the incorrect legal description, this mortgage appeared only in Hennepin County's grantor-grantee index, but the tract index did not contain a record of the mortgage.  *Id*.  The debtors filed for bankruptcy, and the trustee ultimately sought to avoid the mortgage.  *Id*.  The Bankruptcy Appellate Panel for the Eighth Circuit affirmed the bankruptcy court's decision to avoid the defective mortgage.  *Id*.  Specifically, the court noted that "a purchaser of land may be charged with knowledge of a defect arising from an impossible legal description, but . . . that defect will not be considered apparent unless it can be resolved in only one way."  *Id*. at 672.  The court found that in Minnesota, lots may be designated by numbers or letters.  As a result, the defect in the legal description was not apparent—it could have been resolved in more than one way.  *Id*.

MERS asserts that the defect in the MERS mortgage is distinguishable from the mortgage at issue in *Vondall*.  MERS contends that here, the MERS mortgage was recorded against the Property, and anyone performing a title search would have

discovered the existence of the MERS mortgage.[5] Thus, MERS asserts that the principles set forth in *Vondall* do not render the federal tax lien here superior in priority to the MERS mortgage.

MERS also distinguishes the MERS mortgage from that in *In re Stradtmann*, 391 B.R. 14 (B.A.P. 8th Cir. 2008). In *Stradtmann*, although the mortgage stated the correct address of the debtor's homestead, the mortgage contained the legal description of an entirely different parcel of property. *Id*. at 16. The IRS, which held later-priority tax liens, sought priority over the mortgage, and the bankruptcy trustee sought to avoid the mortgage as well. The Bankruptcy Appellate Panel for the Eighth Circuit affirmed the bankruptcy court's decision to avoid the mortgage, holding that for a defect to be apparent for purposes of constructive notice, the defect had to render the legal description "impossible" to the extent that the defect can only be cured in one way.[6] *Id*. at 18. Quoting *Vondall*, the Bankruptcy Appellate Panel stated that "if there is nothing on the face of a mortgage to alert a purchaser that the property description is defective, then there is nothing on the face of the mortgage to trigger a duty of further inquiry." *Id*. at 19 (*quoting* 364 B.R. at 672-73). The panel found that there was nothing on the face of the

---

[5] Although MERS has provided no support (other than lawyer argument) for its position that the mortgage was recorded properly, the Government has stated that it does not dispute any of the facts as presented by MERS. (United States of America's Opp. to Pl.'s Mot. for Summ. J. at 1.)

[6] It should be noted that the court acknowledged that neither the trustee nor the mortgage company challenged the bankruptcy court's ruling that the IRS's liens were superior to the mortgage based on the choateness doctrine. *Stradtmann*, 391 B.R. at 17 n.6. The panel found that despite the absence of an explicit challenge to this ruling, the bankruptcy court ruled correctly and should be affirmed. *Id*. (citation omitted).

mortgage at issue to alert a purchaser that the property description was defective; in fact, the property description did not contain any defects. *Id*. As a result, the mortgage was avoidable. MERS asserts that here, unlike the mortgage in *Stradtmann*, the MERS mortgage was properly recorded, and despite the minor typographical error, provided constructive notice to subsequent lien holders.

In its Motion for Summary Judgment, the United States contends that the MERS' mortgage cannot be enforced without reformation due to the incorrect legal description, thereby rendering MERS' mortgage inchoate. First, the United States asserts that the MERS mortgage is not summarily enforceable. Specifically, the United States recognizes that before a lien is capable of being senior in priority to a federal tax lien, the property subject to the lien must be established and the holder of the lien must have the right to summarily enforce its interest, with "nothing more to be done" to perfect the interest. *United States v. New Britain*, 347 U.S. 81, 84 (1954). The United States contends that the fact that MERS brought a reformation action prior to its foreclosure of the lien proves that MERS could not summarily enforce its interest in the Property. As a result, the United States asserts that the MERS mortgage is inchoate and cannot compete against the federal tax lien.

In support of its position that the MERS mortgage is not summarily enforceable, the Government relies upon *Samco Mortgage Corp. v. Keehn*, 721 F. Supp. 1209 (D. Wyo. 1989). Like the MERS mortgage, the mortgage at issue in *Samco* contained the

9

correct street address, but the mortgage contained an erroneous legal description.[7] Prior to the reformation of the mortgage, the IRS filed three tax liens against the property owners. Then, after the tax liens were properly recorded, the plaintiff-mortgage company brought a successful action to reform the mortgage to correct the erroneous legal description. Subsequently, the plaintiff-mortgage company sought to foreclose on the property. The IRS also sought to declare its liens superior to the plaintiff's lien on the ground that the mortgage described the taxpayer's property incorrectly. The district court found that because the plaintiff could not demonstrate that the mortgage was summarily enforceable—because more needed to be done to enforce the plaintiff's rights under its mortgage *at the time the IRS filed its notices of the federal tax liens*—the plaintiff's mortgage did not have priority over the tax liens. *Samco*, 721 F. Supp. at 1211-12. Specifically, the court noted that "the plaintiff recognized that more had to be done to perfect its mortgage when the plaintiff filed its reformation action in state court." *Id*. at 1211. The district court also noted that the plaintiff could not rely on a relation back theory to give its mortgage priority over the federal tax liens. *Id*. Thus, the district court granted the United States' motion for summary judgment, declaring its tax liens superior to the mortgage. *Id*. at 1212.

The United States also contends here that MERS is misguided in asserting that the United States had constructive notice of the MERS mortgage, despite the defect in the

---

[7]  It appears although the warranty deed conveyed the west end of the parcel described in the deed, while reserving the east end to the grantor, the mortgage described the property in the reverse. *Samco*, 721 F. Supp. at 1211.

10

legal description. The United States asserts that the defect was not apparent, and that the defect can be resolved in more than one way. Specifically, the United States contends that the defect in the detailed description of the property is "inconsistent with what would be expected given the lot and block numbers listed in the legal description" and that this inconsistency "could suggest to a party reviewing the filing that there was an error in the lot or block description." (Opp. at 5.) Or, the United States suggests that the description could connote that the "mortgage was intended to encumber something other than the entire parcel." (*Id.*) The United States asserts that because MERS has not shown that the legal description is impossible on its face, or that altering "14" to "1/4" was the only way to resolve the error, the United States is entitled to summary judgment.

Finally, the United States contends that under *Haas v. Internal Revenue Service*, 31 F.3d 1081 (11th Cir. 1994) and *Samco*, 721 F. Supp. 1209, even if this Court were to allow reformation, MERS' interest would not relate back against the federal tax lien.

The Court finds that neither party is entitled to summary judgment on the record currently before the Court. Although the United States concedes that all of the facts as set forth by MERS are true—thus conceding that a title search would reveal the existence of the MERS mortgage—the Court finds that questions of fact remain as to whether the error in the MERS mortgage property description could be interpreted in only one way. With the record before the Court, the Court would be left to merely speculate as to whether the error has more than one interpretation. The Court finds that some sort of expert testimony and supplemental briefing would be helpful for the Court to reach a dispositive decision in this regard. Because of this shortcoming in the record, the Court

cannot determine whether MERS would be able to summarily enforce its rights under the mortgage without doing anything else.

Moreover, the Court finds that a decision in favor of the United States could lead to a conflicting result. The Citibank and Wells Fargo mortgages are not governed by the same federal law that controls the disposition of the MERS mortgage as to the federal tax lien. Under state law principles of constructive notice, the MERS mortgage would retain priority over the Citibank and Wells Fargo mortgages. In addition, by not answering the Summons and Complaint, Citibank and Wells Fargo have conceded that the MERS mortgage takes priority. If the Court were to rule in favor of the United States, however, a conflict would arise. Under state law principles, MERS would retain priority over Citibank and Wells Fargo; but under federal law, the federal tax lien would trump the MERS lien in priority, but the federal tax lien would still remain subordinate to the Citibank and Wells Fargo liens. The Court is unclear what the practical effect of such a ruling would be, or whether the United States would be left with a right but not a remedy.

## CONCLUSION

The Court has found that summary judgment is inappropriate at this time and that additional briefing on the matter could result in a dispositive decision by the Court. However, under the circumstances involved in this case, the Court suggests that it is in the best interests of the parties to negotiate a resolution of this dispute prior to any further litigation. As the parties are aware, Magistrate Judge Franklin Noel is available to assist in the negotiation of a settlement should the parties find such services to be helpful.

Now, therefore, it is **HEREBY ORDERED**:

1. The Motion for Summary Judgment brought by Plaintiff Mortgage Electronic Registration Systems, Inc. (Doc. No. 15), is **DENIED**; and

2. The Motion for Summary Judgment brought by the United States of America (Doc. No. 10) is **DENIED**.

Dated: March 25, 2009             s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court